ROBERTS *v* POSEY

1. AUTOMOBILES — STATUTES — OWNER'S LIABILITY — OWNER'S CONSENT.

    The civil liability act absolves the automobile owner from liability only when the vehicle is being driven without his express or implied consent or knowledge; the consent or knowledge refers to the fact of the driving and it does not refer to the purpose of the driving, the place of the driving or to the time of the driving (MCLA 257.401).

REFERENCE FOR POINTS IN HEADNOTE
[1–7] 8 Am Jur 2d, Automobiles and Highway Traffic § 571 *et seq.*

2. AUTOMOBILES—STATUTES—CIVIL LIABILITY ACT.

The purpose of the civil liability act is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle (MCLA 257.401).

3. AUTOMOBILES—STATUTES—OWNER'S LIABILITY—COMMON LAW— PROXIMATE CAUSE.

The civil liability act makes the automobile owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury and by common-law standards, this may be a remote, rather than a proximate cause; but it is competent for the legislature to declare a remote factor to be a proximate cause (MCLA 257.401).

4. AUTOMOBILES — EVIDENCE — PRESUMPTIONS — OWNER'S CONSENT — BURDEN OF PROOF.

An evidentiary presumption of statutory consent or knowledge of the driving arises upon proof of permission to use an automobile and, once the fact of permission to use the vehicle is established, the burden is on the owner to show that the vehicle was not thereafter being driven with his express or implied consent or knowledge (MCLA 257.401).

5. AUTOMOBILES—PRESUMPTIONS—OWNER'S CONSENT—STIPULATIONS.

Stipulation that the owner of an automobile agreed to allow the driver, who later had an accident with the owner's automobile, to use his vehicle creates an evidentiary presumption that the vehicle was thereafter being driven with the owner's express or implied consent or knowledge (MCLA 257.401).

6. AUTOMOBILES—OWNER'S LIABILITY—NEGLIGENCE—AGENCY.

The owner's liability statute is too important a foundation stone in the field of automobile-negligence law to be circumscribed by judicially declared limitations borrowed from the law of agency (MCLA 257.401).

7. AUTOMOBILES—PRESUMPTIONS—OWNER'S CONSENT—EVIDENCE.

The presumption that a motor vehicle, taken with the permission of its owner, is thereafter being driven with his express or implied consent or knowledge is not overcome by evidence that the driver has violated the terms of the original permission, nor is it overcome by evidence of good faith efforts by the owner to get the vehicle returned voluntarily by the driver (MCLA 257.401).

Appeal from Court of Appeals, Division 1, R. B. Burns, P. J., and Levin and Churchill, JJ., affirming

Wayne, George E. Bowles, J. Submitted December 8, 1971. (No. 7 December Term 1971, Docket No. 53,035.) Decided February 25, 1972.

26 Mich App 95 reversed.

Complaint by Kenneth Roberts against Leonard Posey for damages for injuries received in an automobile collision. Judgment of no cause of action. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded.

*Metry, Metry, Sanom, Ashare & Goldman* (by *A. Jerome Allen*), for plaintiff.

*Blum, Graber & Rosenberg, P. C.,* for defendant.

T. E. BRENNAN, J.

## I. FACTS

The parties, by stipulation pursuant to GCR 1963, 812.10, agree to the following facts:

"Defendant Leonard Posey is an ordained minister. On September 10, 1965, at approximately 10:00 am, Reverend Posey was visited at his home by one James Montague. Mr. Montague at that time requested the loan of Reverend Posey's automobile for the express purpose of going to pick up his pay check. At that time, Reverend Posey agreed to allow Mr. Montague to use his vehicle but admonished him at that time that the automobile must be brought back no later than 11:00 or 11:30 am as Reverend Posey had to go out on church business at that time. He was assured by Mr. Montague that the vehicle would be brought back within a very short time as Mr. Montague was only going to use the automobile for the express purpose of picking

up his check from his place of employment and returning immediately. Reverend Posey then allowed Mr. Montague to use his automobile.

"When Mr. Montague did not return at the stated hour Reverend Posey called Mr. Montague's wife to inquire of his whereabouts. She did not know where he might be and Reverend Posey made many other telephone calls including Mr. Montague's place of employment, the Police Department, various hospitals, and other places where Mr. Montague might appear, all to no avail. Later that afternoon Reverend Posey notified the Police Department that his vehicle was missing and was told to come in and make a formal report of a stolen vehicle the next day if it was not returned by that time.

"At approximately 3:00 am on September 11th, Reverend Posey received a telephone call from Mr. Montague informing him that he had had an accident with Reverend Posey's automobile."

The action was brought by plaintiff against defendant Posey alone in the Wayne County Circuit Court and was tried without a jury. At the end of the trial, the judge found defendant liable as owner of the vehicle operated by Montague under the civil liability act, MCLA 257.401; MSA 9.2101. Before entry of judgment for plaintiff, however, the trial judge reconsidered his decision, and ruled that the driver Montague "was not driving reasonably within the granted consent; he was on an independent joy ride of his own the next day." Judgment was entered for the defendant. The Court of Appeals affirmed.

## II. ISSUE

The sole issue is whether, on the stipulated facts, defendant is liable as the owner of an automobile driven by one "with his  *  *  *  express or implied

consent or knowledge" within the meaning of MCLA 257.401, MSA 9.2101.

### III. DISCUSSION OF THE LAW

The statute, MCLA 257.401; MSA 9.2101, provides:

"Sec. 401. Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family: Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The trial judge based his opinion on *Merritt* v *Huron Motor Sales, Inc,* 282 Mich 322 (1937), and *Moore* v *Palmer,* 350 Mich 363 (1957).

*Moore* v *Palmer* was a case involving an employee-driver. We held that, with respect to employee-drivers, the liability of employer-owners is not limited by the common-law doctrine of respondeat superior. The statutory owners' liability is legislatively declared, and based upon a broader standard than scope of employment.

*Merritt* v *Huron* is very much on all fours with the case at bar. In *Merritt,* the car was owned by an auto agency. Its sales manager loaned the vehicle to one Schuon, for the purpose of visiting a sick friend in a Brighton hospital. Schuon was to return the car to Ann Arbor by 10 p.m., so that the sales manager could pick up his daughter from a party. The accident occurred at 2 a.m. in Detroit. Verdict was for the plaintiff. This Court reversed, ordering entry of judgment *non obstante veredicto,* holding that under uncontroverted evidence, the vehicle was not being driven with the express or implied consent or knowledge of the owner.

The *Merritt* case is poorly reasoned. It engrafts upon the statutory test of owner's liability, an element of conditional consent which the legislature has not provided.

It may be assumed that no auto owner gives consent to another to have an accident with his car. In that sense, every vehicle driven by someone other than the owner, which becomes involved in a collision is being driven outside the scope of the owner's consent.

The statute absolves the owner from liability only when the vehicle is being *driven* without his express or implied consent or knowledge. The consent or knowledge, therefore, refers to the *fact* of the *driv-*

*ing.* It does not refer to the *purpose* of the driving, the *place* of the driving, or to the *time* of the driving.

The purpose of the statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.

The owner who gives his keys to another, and permits that person to move several thousand pounds of steel upon the public highway, has begun the chain of events which leads to damage or injury.

The statute makes the owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury.

By common-law standards, this may be a remote, rather than a proximate cause. But it is competent for the legislature to declare a remote factor to be a proximate cause.

There is a further, practical reason for overruling *Merritt.* In *Merritt,* the testimony of the sales manager, his wife, and the driver, all substantiated the limitations upon the use of the vehicle.

Although the plaintiff in *Merritt* was able to cast some doubt upon the credibility of some of that testimony, he was unable to bring out any affirmative substantive proof that the agreement was otherwise. He was unable, absent any presumption in his favor, to rebut the self-serving evidence of the defendant.

The *Merritt* situation is typical of such cases. The plaintiff is at great disadvantage in disproving defendant's version of the oral agreement under which the vehicle was delivered.

The driver-defendant is almost always beholden to the owner-defendant. After all, his negligence got them both into the litigation. The driver-defendant's inclination to support the owner's testimony is strong. The potential for manufactured testimony is great.

Strong factual situations can be conceived in which owner consent is not concluded by proof of the owner delivering keys and possession of the vehicle.

But it must be conceded that an evidentiary presumption of statutory consent or knowledge of the driving arises upon proof of permission to use the car.

Once the fact of permission to use the vehicle is established, the burden is on the owner to show that the vehicle was not thereafter being driven with his express or implied consent or knowledge.

## IV. APPLICATION OF THE LAW

In the case before us, it is stipulated that the defendant Posey agreed to allow Montague to use his vehicle. That stipulated fact creates an evidentiary presumption that the vehicle was thereafter being driven with the owner's express or implied consent or knowledge.

We must then consider whether the subsequent events, likewise stipulated on this record, were such that the trier of the fact could have concluded that the presumption of consent was overcome.

Defendant Posey expected Montague to return the vehicle. The original delivery of the automobile contemplated that Montague would return it. Posey's efforts to locate Montague at his home, his place of employment, the Police Department, various hospitals and other places where he might likely be were all actions entirely consistent with an intention to *get Montague to return the car.*

It is not stipulated, nor should we or the trier of the fact presume, that Posey was then trying to get Montague to stop driving the car. Posey wanted to exercise control over the direction in which the car was being driven—it is not reasonable to con-

clude that the defendant was then trying to get Montague out from behind the wheel, at least until the car was returned to its owner.

The final stipulated fact comes closer to actual revocation of consent. It is agreed that later in the afternoon of the day on which he had given the car to Montague, Posey did in fact call the police for the purpose, not of locating the errant Montague, but of reporting the vehicle missing or stolen.

The stipulated facts are that Posey

" * * * was told to come in and make a formal report of a stolen vehicle the next day if it was not returned by that time."

The record admits of no other conclusion than that the defendant did precisely as he was instructed by the person to whom he spoke at the police station. In short, he was waiting until the next day to report the vehicle stolen, *if it was not returned by then.*

By whom was it to be returned? Montague. How was Montague to return it? By *driving* it.

Had Posey at that point in time revoked his consent to Montague *driving* his vehicle? Obviously not. He knew Montague still had the car. He expected Montague to continue driving the car, *at least until it was returned.*

## V. CONCLUSION

The owner's liability statute is too important a foundation stone in the field of automobile-negligence law to be circumscribed by judicially declared limitations borrowed from the law of agency.

The presumption that a motor vehicle, taken with the permission of its owner, is thereafter being driven with his express or implied consent or knowledge is not overcome by evidence that the driver has violated the terms of the original permission, nor is

it overcome by evidence of good faith efforts by the owner to get the vehicle returned voluntarily by the driver.

*Merritt* is overruled. The judgment of the courts below are reversed, and the cause remanded for entry of judgment for the plaintiff. Costs to the plaintiff appellant.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.