Hathaway, J.
(dissenting). I fully join Justice CAVANAGH’s dissenting opinion with respect to today’s decision in Progressive Marathon Insurance Company v DeYoung. I write separately to address the majority’s decision in Spectrum Health Hospitals v Farm Bureau Mutual Insurance Company of Michigan, in which the majority rejects and discards the “chain of permissive use” theory. I am not persuaded that this theory should be discarded. It is a well-reasoned and well-established doctrine that has been part of this state’s jurisprudence for decades.
At issue in Spectrum Health is the proper interpretation of MCL 500.3113, which provides in pertinent part:
A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.
As the language of the statute provides, MCL 500.3113(a) generally precludes an injured person from recovering personal protection insurance (PIP) benefits under a policy associated with a vehicle if that person *548 had taken the vehicle unlawfully. The question before us in Spectrum involves determining whether the PIP claimant’s taking of the vehicle in question was unlawful under this provision.
Because the no-fault act does not define “taken unlawfully,” courts have looked beyond the words of the statute to effectuate the intent of the Legislature. In giving this phrase meaning, our courts have developed the doctrine known as the chain-of-permissive-use theory. I would affirm the Court of Appeals’ judgment in Spectrum Health[1] because the Court of Appeals properly applied this theory to the facts before it.
The chain-of-permissive-use theory was first recognized in Bronson Methodist Hospital v Forshee.[2] In Bronson, the Court of Appeals held that a person had not unlawfully taken the car in which he was later injured even though he had not been given permission by the owner to use the car. The vehicle owner’s son, Thomas Pefley, was arrested while driving with friends in his family’s car. Given that he was under arrest, he asked one of his friends, William Morrow, to take the car home. Later that night, Morrow let another friend, Mark Forshee, drive the car. Forshee was intoxicated and eventually crashed the car after being chased by police. The primary issue in the case was whether Forshee had unlawfully taken the car and was therefore excluded from recovering PIP benefits under MCL 500.3113(a).
The unanimous panel in Bronson noted that there was no caselaw that specifically defined “taken unlaw *549 fully” as that phrase is used in the no-fault act.[3] Accordingly, the Bronson panel turned to a similar area of law involving a vehicle owner’s liability. Specifically, the panel considered this Court’s decision in Cowan v Strecker,[4] which involved the taking of a vehicle with the consent of an intermediate user but without the express consent of the owner. While Cowan did not involve the no-fault act, it involved a similar statute, MCL 257.401, commonly known as the owner’s liability statute.
In Cowan, the owner of the vehicle loaned it to an acquaintance with the express direction to not let anyone else use it. Nevertheless, the acquaintance let her son use the car, and he was involved in an accident. This Court determined that the owner of the vehicle was hable under the owner’s liability statute, based on a broad understanding of consent. The Court reasoned that given the owner’s willing surrender of the vehicle to the acquaintance, the owner had consented to the risks inherent in surrendering control of a vehicle to another, “regardless of admonitions which would purport to delimit his consent.”[5] Thus, this Court held that an owner’s consent to an intermediate user included the consent to any subsequent users of the vehicle, even when the owner set restrictions on the use by the intermediate user.
The Court of Appeals in Bronson found this Court’s interpretation of the owner’s liability statute persuasive and applied the same analysis and reasoning to the unlawful-taking provision contained within the no-fault act. As such, Bronson held that when an owner of a vehicle gives permission to an intermediate user to take the vehicle, the intermediate user then has the authority to give permission to a subsequent user to take that *550 vehicle. Therefore, the subsequent user in Bronson had lawfully taken the vehicle with the consent of the owner under the no-fault act.[6]
In Spectrum Health, the Court of Appeals correctly applied the chain-of-permissive-use theory to the facts before it. Plaintiff, Spectrum Health Hospitals, seeks to recover the cost of care that it provided to Craig Smith Jr. from the insurer of a truck owned by Craig Smith Jr.’s father, Craig Smith Sr. Craig Sr.’s truck was insured by defendants Farm Bureau Mutual Insurance Company of Michigan and Farm Bureau General Insurance Company of Michigan (collectively “Farm Bureau”). Farm Bureau claims that Craig Jr. is excluded from coverage under MCL 500.3113(a) because he had taken his father’s truck unlawfully. Craig Sr. had loaned the truck to Craig Jr.’s girlfriend with instructions not to let Craig Jr. drive it. However, Craig Jr.’s girlfriend did allow him to drive it, and he was involved in an accident. Spectrum Health treated Craig Jr. and brought the instant suit to recover PIP benefits associated with his care. Both the trial court and the Court of Appeals held that Craig Jr. was not excluded from coverage under the chain-of-permissive-use theory because Craig Sr. had turned control of the truck over to Craig Jr.’s girlfriend, and she in turn gave Craig Jr. permission to use the truck. The majority’s decision overrules the Court of Appeals and discards the weEestabhshed chain-of-permissive-use theory.
I disagree with the majority because the Court of Appeals correctly applied Bronson and the chain-of-permissive-use theory based on Cowan. I find that the Bronson analysis was a well-reasoned interpretation of the phrase “taken unlawfully” in its context within MCL 500.3113(a). It is reasonable to assume that the Legislature intended “taken unlawfully” to be applied *551 in terms of consent of the owner, and this Court in Cowan properly defined what the consent of an owner includes. The majority’s opinion simply substitutes its own definition of “taken unlawfully” for the well-established definition set forth in Bronson. However, the definition in Bronson was consistent with the policy of this state under the no-fault act that “ ‘persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery.’ ”[7] Unfortunately, the majority’s new definition strays from this policy when there is no compelling reason to do so.
The majority criticizes Bronson for looking outside the text of the no-fault act in order to determine the meaning of “taken unlawfully.” The majority expresses concern that Bronson relied on the meaning of an owner’s “consent,” a term found only in one unrelated provision of the no-fault act. See MCL 500.3116(3). However, the majority uses the same approach in reaching its definition of “taken unlawfully.” Specifically, the majority looks outside the text of MCL 500.3113(a) and relies on the word “authority,” which is also found only in one unrelated provision of the no-fault act. See MCL 500.3104(1). In its search for the meaning of “taken unlawfully,” the majority looks to the dictionary for the definitions of “unlawful” and “take.” From the dictionary definitions, the majority concludes that “taken unlawfully” refers to a criminal act. Then, just as the panel did in Bronson, the majority seeks guidance from a statute governing another area of law, and it turns to MCL 750.414, a statute that places criminal liability on a person who “takes or uses without authority any motor vehicle without intent to steal the same. . . .” *552 The majority focuses on the word “authority” in the criminal statute despite the fact that “authority” is not found in the relevant provision of the no-fault act. It then concludes that if a person takes a vehicle against the express wishes of the owner, he or she has taken the vehicle without the owner’s “authority” and has done so unlawfully under the no-fault act. Thus, like Bronson’s reliance on “consent” from the owner’s liability statute, the majority relies on an owner’s “authority” under another area of law. Given that the majority engages in the same “outside the text of the statute” analysis, its criticisms of Bronson fall flat.
I disagree with the majority’s interpretation of “taken unlawfully.” Its interpretation precludes a class of injured parties from recovering PIP benefits even when a party was given permission to take a car by an intermediate user. The Bronson interpretation is the better interpretation because it was more consistent with the purpose of the no-fault act to provide a source and means of recovery to persons injured in auto accidents. The majority’s interpretation conflicts with that purpose. Moreover, the idea that the consent of an owner can be passed down through a chain of permissive users is well established in the law, and I see no reason to depart from it.
Accordingly, I respectfully dissent. I would affirm the judgment of the Court of Appeals in Spectrum Health because it correctly applied the well-reasoned and well-established chain-of-permissive-use theory.
Marilyn Kelly, J., concurred with Hathaway, J.

 Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2011 (Docket No. 296976).

 Bronson Methodist Hosp v Forshee, 198 Mich App 617; 499 NW2d 423 (1993).

 Id. at 623.

 Cowan v Strecker, 394 Mich 110; 229 NW2d 302 (1975).

 Id. at 115.

 Bronson, 198 Mich App at 625.

 Coburn v Fox, 425 Mich 300, 311 n 3; 389 NW2d 424 (1986) (citation omitted).